WYCKOFF et al. v. HOWE SCALE CO. OF 1886.

(Circuit Court, D. Vermont. August 14, 1901.)

**1. TRADE-NAME—WRONGFUL USE—PARTICIPATION—EVIDENCE.**

Where defendant engaged as selling agent for typewriters sold under the trade-name of "Remington-Sholes," manufactured by a corporation organized by descendants of the original Remingtons, the right to use whose name was sold to plaintiff, in an action for defendant's participation in the use of the name in connection with the name "Sholes" as applied to typewriters, evidence relating to such machines emanating from the Remington-Sholes Company, under whom defendant justified, and with the name in controversy on them, and transactions relating thereto, was admissible as res gestæ.

**·2. SAME.**

It was not material that the transactions referred to by such evidence occurred in foreign countries, since in such suit the boundaries of the dealing. and not of countries, constitute the limits of investigation; nor could the laws of such countries vary the rights of parties in the United States with respect to transactions emanating therefrom, though carried out in foreign countries.

**3. SAME.**

. Plaintiffs acquired from the original manufacturers of Remington typewriters the sole right to use the name "Remington" as a name for typewriters. Thereafter descendants of the original manufacturers, also named "Remington," became members of a corporation making a typewriter under the name of "Sholes," when the name was changed to the "Remington-Sholes." *Held* that, since ultimate purchasers of typewriters might be led to think that the addition of the name "Sholes" was a

new style of the old machine coming from the same source, such use of the name "Remington" was an attempt to deceive the public, and unwarranted.[1]

**4. SAME—NAMES—RIGHTS OF DESCENDANTS.**

No special right to use a family name which has become a trade-name applied to a manufactured article accrues by virtue of the relation which descendants bear to the original manufacturer of the same name, such descendants being entitled to no other than their natural rights to use their own names in the transaction of their own business.

**5. SAME—USE OF NAME—GIFT TO CORPORATION.**

Though all persons have a natural right to use their own names in their own business, the giving of the name "Remington" to a corporation engaged in making typewriters by two persons of that name, descendants of the original manufacturers of Remington typewriters, who had sold the right to use the name as applied to typewriters to plaintiff, such persons not being manufacturers of typewriters, except as stockholders in the corporation, nor having become such in their own names, nor having their own names put on the machines, was not a legitimate use of their natural right to use their name in their own business to the injury of the plaintiff.

**6. SAME—ABBREVIATION.**

Where a corporation wrongfully used the name "Remington" in connection with the word "Sholes" as applied to typewriters, the fact that it subsequently shortened the name to "Rem-Sho" was not such a change of the term as would guard purchasers against belief that they were not Remington machines.

In Equity.

Wilder L. Burnap, H. D. Donnelly, and Charles E. Mitchell, for plaintiff.

Butler & Moloney, James H. Pierce, and George P. Fisher, Jr., for defendant.

WHEELER, District Judge. E. Remington & Sons, a corporation of New York of 1865, made and sold firearms. It began to make and sell typewriters as a branch of its business in 1873, which became well and favorably known, and were marked as Remington machines. The plaintiff, then a partnership, now a corporation, of New York, became the selling agent of these typewriters, which were largely advertised and introduced by that name in this and foreign countries, and acquired and maintained a good reputation for style and workmanship. In 1886 the plaintiff bought out the typewriter business, including franchises and trade-marks, and has continued and largely increased the manufacture and sale of the Remington machines by that name. In 1893, Zalmon G. Sholes got up a machine called the "Z. G. Sholes Typewriter," and a corporation of Illinois was organized to make and sell it, called the "Z. G. Sholes Company." Carver Remington and Franklin Remington, of Chicago, acquired an interest in the corporation and business, and the name of the machine was changed to "Remington-Sholes," and in 1894 the name of the corporation was changed to "Remington-Sholes Typewriter Company." This company has made, advertised, and extensively sold those machines in this and foreign countries by the

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper Bros., 30 C. C. A. 376.

name "Remington-Sholes" in full, or "Rem-Sho," an abbreviation of it, and placed one or the other prominently upon the machines. The defendant, the Howe Scale Company of 1886, is a corporation of Vermont, and has been and is a sales agent of these machines to a large extent for the Remington-Sholes Company, and so has prominently participated in this use of the name "Remington" and this abbreviation of it in this business in this manner. This suit is brought for that participation. The defendant justifies under the Remington-Sholes Company, and that company has assumed the defense of the suit, and the validity of the defense depends upon the right of that company to so take and use the name "Remington" upon its machines.

Several questions in the case have been made by motion to suppress evidence, and have been brought into the final hearing. They relate principally to testimony taken in rebuttal as not properly such; to testimony as to the use of the name in business correspondence and transactions not shown to have emanated from the defendants; and to testimony showing the use of the name upon, and in connection with the sale of, typewriters in foreign countries. Perhaps some of the testimony taken in rebuttal is not strictly such, but is rather cumulative; still it is such as would be admissible if taken at the proper time, or with leave, and as the motion has been brought along the consent to the hearing in chief, and the testimony might be the subject of a motion to retake, without intending to relax the rule as to order, it is deemed best under the circumstances that this testimony be left to stand for what it is worth. The evidence relates to machines emanating from the party under whom defendant has acted and justifies, with the name in question upon them, as placed there by that party; and evidence as to transactions in respect to such machines in connection with and relation to the plaintiff's machines and names in trade, although not proceeding directly from that party, or from the defendant, or authorized by either, appears to be admissible as a part of the res gestæ for the purpose of showing the effect upon the plaintiff's trade of putting these other machines into the markets with the names in question upon them. As this is a suit for interference in trade, the boundaries of the dealing, and not of governments or countries, is material. There is said to be a difference between the laws of this country and those of some of the countries in question; but the laws of those countries would not govern or vary the rights of parties here in respect to transactions emanating from here, although carried out there. The motion to suppress is therefore overruled.

The intricate and delicate machinery of typewriters requires good materials and nice workmanship, and their reputation depends largely upon the quality of their manufacture. The Remington typewriter was among the pioneers, and one of the foremost in reputation for good construction. That the introduction to the markets of another machine with that name upon it, at the time when the Remington-Sholes machine appeared, would make confusion in the plaintiff's trade, and tend to pass off the new machines for the regular Remington machines of the plaintiff, needs no proof but the circumstances.

That it actually did have that effect well appears from the evidence. That was what the taking of the name was calculated to do, and what was to be expected. The ultimate purchasers would be led to think that the addition of the name "Sholes" was a new style of the old machine coming from the same source. Upon the well-established principles that one has no right to push his wares as those of another, this would ordinarily be an actionable wrong at law, repetition of which, to save multiplicity of suits for repeated wrongs, would be restrainable in equity. That these Remingtons are descendants of one of the original Remingtons, and Sholes a descendant of an inventor of some part of the original typewriters, is set up and relied upon as establishing a right to the use made of the name "Remington-Sholes" in this connection. No right descended, however, in these respects, from any of these ancestors to any of these persons; and this excuse has no legal foundation, but is entirely sentimental. They were situated, as to this, as any other persons of the same names would have been, with no standing but their own natural rights to the use of their own names in the transaction of their business. That all persons have, respectively, the right to use their own names in their own business, is entirely clear; but this right is subject to the limitation common to all rights that it is to be so used as not to injure the rights of others. These Remingtons were not themselves manufacturers of typewriters, and did not start in as nor become such in their own names, nor have they had their own names put upon machines of their own make; but they gave their name to a large corporation as a distinct entity, which took the name into its typewriter business, and put it upon the machines of that corporation, whereby they undertook to confer the right to the use of that name upon that entity for the benefit of others, who had no right to use it at all. This was not a legitimate exercise of the natural right to use their own name in their own business, but was an attempt to exercise a fictitious right to use the name in, to a great part, others' business. This was going far beyond their own rights, and was an undertaking to give what they did not have; and their own natural right to the use of their own name in their own business became thereby so mingled with the unlawful use of it for the benefit of others that it is indistinguishable here. They lost their identity in that of the corporations. Connecting the name "Sholes" with "Remington" in the business and on the machines would not or might not adequately indicate to a purchaser who had known or heard of the Remington typewriters, and wanted one, that these were not original Remingtons, such as were wanted. The name, although linked with "Sholes," would indicate "Remington" connection in typewriter production, and imply the original manufacture. This use of the name "Remington," although done in such connection, appears to be an unjustifiable invasion of the right to that name belonging to the plaintiff. The long name "Remington-Sholes" got shortened into "Rem-Sho" in writing and speech in conducting the defendant's business, which was well understood to be an abbreviation of the full name. The defendant has put the abbreviation upon the machines in place of the full name, and claims that this, at least, is so different

from the name "Remington," as used by the plaintiff and its prede-cessors, that it can and does not amount to any representation that the machines are Remington machines. If this short name had been the one first used, there would be much plausibility in this argument; but, following "Remington-Sholes," as it has, in use, it has become a well-known short representation of what the long name it stands for represented, and of itself now amounts to a wrongful representation of the source of the defendant's machines.

According to these views, the plaintiff appears to be entitled to a decree suppressing the use of the name "Remington" in the com-pound name of "Remington-Sholes," and the use of the compound abbreviation of that name upon the defendant's typewriting machines, or in the sale thereof. Decree for plaintiff.